STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2024 CA 0744

**RITTIRONG CHAROENPAP**

**VERSUS**

**DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT**

Judgment Rendered:_____**DEC 2 7 2024**_____

* * * * * * *

On Appeal from the State Civil Service Commission
In and for the State of Louisiana
Docket Number S-18715

Honorable David L. Duplantier, Chairman
D. Scott Hughes, Vice-Chairman
John McLure, Kristi Folse, Craig A. Netterville,
Candes C. Carter, and Jo Ann Nixon, Members

Byron P. Decoteau, Jr., Director
Department of State Civil Service

* * * * * * *

Karl J. Koch                          Counsel for Plaintiff/Appellant,
Baton Rouge, Louisiana                Rittirong Charoenpap


Olivia Marchand                       Counsel for Defendant/Appellee,
Baton Rouge, Louisiana                Department of Transportation and
                                      Development

* * * * * * *

**BEFORE:  GUIDRY, CJ; PENZATO AND STROMBERG, JJ.**

**PENZATO, J.**

A reinstated permanent civil service employee appeals an order of the Louisiana State Civil Service Commission interpreting an administrative rule to find the employing agency did not improperly withhold the employee's portion of the retirement contribution following the employee's reinstatement to employment. After review, we affirm.

## FACTS AND PROCEDURAL HISTORY

Rittirong Charoenpap, a permanent civil service employee, was terminated from his position with the Louisiana Department of Transportation and Development (DOTD) in December 2020. In January 2023, a Civil Service Referee reversed Mr. Charoenpap's termination, reinstated his employment, and ordered DOTD to pay back wages to Mr. Charoenpap and to remove all documents concerning the termination from his personnel file. The Civil Service Commission denied DOTD's appeal from this ruling, and the Referee's decision became the final decision of the Commission. See La. Const. art. X, § 12(A) ("the decision of the referee becomes the final decision of the commission as of the date the application is denied.")

The reversal of Mr. Charoenpap's termination and his return to state employment required that his account and benefits with the Louisiana State Employees' Retirement System (LASERS) be returned to his pre-termination status. LASERS invoiced Mr. Charoenpap in May 2023, advising that all retirement benefits received thus far, plus interest at the actuarial rate, must be repaid. Mr. Charoenpap paid the invoiced amount in full in June 2023.

LASERS also sent an invoice to DOTD in May 2023 setting forth the amount owed as Mr. Charoenpap's contribution and the amount owed as DOTD's contribution to purchase 2.3 years of service credit. See La. Admin. Code tit. 58, Pt. I, §1701(A). DOTD deducted the amount of Mr. Charoenpap's contribution from the back pay owed to him and used the funds to pay the amount owed to LASERS

2

as Mr. Charoenpap's contribution. DOTD sent Mr. Charoenpap a check for the remaining amount owed as back pay.

In September 2023, Mr. Charoenpap requested the Commission's "assistance...in enforcing the Referee's [d]ecision."[1] Treating this request as an appeal, the Commission issued an order in December 2023, directing DOTD to provide a written response concerning Mr. Charoenpap's unemployment compensation, an issue not pertinent to this appeal. DOTD did not respond, and on March 7, 2024, the Commission rendered an order addressing the issue raised in the December 2023 order as well as the issue pertinent to this appeal, DOTD's purported "unauthorized and improper withholding" of funds from Mr. Charoenpap's back pay, which DOTD used to pay Mr. Charoenpap's contribution portion of the amount owed to LASERS.

The Commission concluded that, pursuant to La. Admin. Code. tit. 58, Pt I, §1701 (sometimes referred to as "Section 1701"), subsection (C), DOTD could withhold Mr. Charoenpap's portion of the retirement contribution and remit it to LASERS, along with DOTD's contribution. Mr. Charoenpap filed the instant appeal, challenging the Commission's interpretation of Section 1701(C). DOTD has not responded to this appeal.

## INTERPRETATION OF LOUISIANA ADMINISTRATIVE CODE TITLE 58, PART I, §1701(C)

The Commission's interpretation of laws and regulations is reviewed under the error of law, *de novo*, standard of review. See *Harris v. Department of Public Safety & Corrections-Dixon Correctional Institute*, 2022-1188 (La. App. 1st Cir. 6/2/23), 370 So.3d 43, 48. The rules of statutory construction and interpretation

---

[1] The request was purportedly made in a letter dated September 12, 2023, from Mr. Charoenpap's counsel to the Commission. This letter is not in the record.

apply equally well to ordinances, rules, and regulations. *Winmill Tire, LLC v. Colt, Inc.*, 2020-01446 (La. 1/28/22), 333 So.3d 414, 420.[2]

The language of the law itself is the starting point in the interpretation of any statute. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9; La. R.S. 1:4. *Carollo v. Department of Transportation & Development*, 2021-01670 (La. 9/1/22), 346 So.3d 751, 759. The words of a law must be given their generally prevailing meaning. La. C.C. art. 11. Words and phrases shall be read in context and construed according to the common and approved usage of the language. See La. R.S. 1:3; *Pickard v. Amazon.com, Inc.*, 2023-01596 (La. 6/28/24), 387 So.3d 515, 519. Dictionaries can be a useful source for determining the common and approved usage of words. *Pickard*, 387 So.3d at 520.

It is presumed that every word, sentence, or provision in a statute was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provision were employed. *Hartman v. St. Bernard Parish Fire Department & Fara*, 2020-00693 (La. 3/24/21), 315 So.3d 823, 829. As a result, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found. *Hartman*, 315 So.3d at 829.

---

[2] The retirement provisions of the Louisiana Administrative Code do not come within the purview of the Commission. Therefore, we are not required to "afford considerable weight" to the Commission's construction and interpretation of Section 1701(C). See *Ford v. State, Department of Health & Hospitals*, 2014-1262 (La. App. 1st Cir. 3/6/15), 166 So.3d 332, 337, *writ denied*, 2015-0774 (La. 6/1/15), 171 So.3d 264.

Louisiana Administrative Code Title 58, Part 1 sets forth provisions concerning LASERS. Section 1701, "Purchases of Service by Reinstated Employees," states:

> A. When an employee is reinstated to a position in state government by the Department of Civil Service or a court of law, the employee is entitled to receive retirement service credit for the period of time that is reinstated provided payment of employee and employer contributions, plus interest, is made to the retirement system within 60 days of the reinstatement.
>
> B. If reinstated, the employee shall *pay* an amount equal to the current employee's contributions based on the earned compensation for the period of time that was reinstated. The employing agency shall *pay* the employer contributions that would have been due plus compound interest at the actuarial valuation rate for all contributions payable from the date the contribution was due until paid.
>
> C. When a reinstated employee is entitled to back pay from the employing agency, the agency shall *remit* the employer and employee's contributions that would have been due if the employee had been employed during that time, plus interest. The agency shall also provide LASERS with a report of earnings on a monthly basis for the period for which the individual was reinstated.
>
> D. If a member has received a refund of contributions after a wrongful termination, he must *repay* the refund not later than the sixtieth day following the first day the member returns to work after reinstatement is ordered for the member's retirement status and service credit to be fully restored.
>
> E. Any costs to the retirement system associated with these procedures shall be *paid* by the employing agency. (Emphasis added.)

Section 1701(C) is the applicable provision since Mr. Charoenpap was reinstated with back pay. Mr. Charoenpap acknowledges that, ordinarily, contributions to LASERS for a state employee's retirement are made by both the employee and the employer. He also acknowledges that, when a terminated civil service employee is reinstated and *is not* awarded back pay, Section 1701(B) requires the state employee to pay his own portion of the retirement contribution for the period of termination. However, Mr. Charoenpap asserts that, pursuant to Section 1701(C), if a terminated civil service employee is reinstated and *is* awarded back pay, the employing agency is required to pay, with its own funds, the

employee's portion of the retirement contribution for the period of termination. Thus, Mr. Charoenpap contends DOTD was required to pay, out-of-pocket, his portion of the retirement contribution as well as its own.

In its March 7, 2024 order, the Commission noted that Section 1701(C) states the employing agency is to "remit," rather than "pay," both the employer and employee portions of the retirement contributions to LASERS. The Commission cited Webster's Dictionary, defining "remit" as "to send (money) in payment." The Commission concluded that, when Section 1701(C) applies, there is an award of back wages from which DOTD may withhold the employee's portion of the retirement contribution and "remit" it to LASERS, along with the employer's portion. Conversely, Section 1701(B) states that each party is responsible for paying its portion of the retirement contribution. Under Section 1701(B), there is no back wage award from which the employer may withhold funds to remit (send) to LASERS. On our *de novo* review, after considering the plain wording of Section 1701, we agree with the Commission's reasoning and interpretation of subsection (C).

Mr. Charoenpap argues the Commission gave too much weight to the word "remit" in Section 1701(C). However, subsection (C) is the only place the word "remit" is used in Section 1701. The drafters of Section 1701 otherwise chose to use variations of the word "pay." Subsection (B) requires the employee and employer to "pay" their respective contributions. Subsection (D) provides that a member shall "repay" a refund of contributions. Finally, pursuant to subsection (E), costs to the retirement system shall be "paid" by the employing agency. We must give effect to this deliberate choice. See *Hartman*, 315 So.3d at 829.

The verb "pay" means "[t]o give money for a good or service that one buys," "[t]o transfer money that one owes to a person, company, etc." *Black's Law*

6

*Dictionary* (12th ed. 2024).[3] <u>See also</u> https://www.merriam-webster.com/dictionary/pay. Applying this generally prevailing meaning of "pay," it is clear that subsections (B), (D), and (E) identify who "owes" the amounts discussed. "Remit" is defined as "to transmit (as money)." *Black's Law Dictionary* (12th ed. 2024).[4] <u>See also</u> https://www.merriam-webster.com/dictionary/remit. Applying this generally prevailing meaning of "remit," it is evident that subsection (C) requires the employing agency to transmit or send money, rather than give money it owes. If the drafters of Section 1701 intended for employing agencies to owe both portions of the retirement contribution, the word "pay" would have been used, as it was elsewhere in Section 1701. For instance, the drafters made it clear in subsection (E) that the employing agency is to pay any associated costs owed to the retirement system.

Next, Mr. Charoenpap points out that LASERS sent the invoice for both contribution amounts to DOTD alone and argues that, consistent with Section 1701(C), LASERS charged DOTD for the full amount of contributions owed to restore his retirement benefits. Contrary to this assertion, and consistent with the plain wording of Section 1701(C), we find this action by LASERS recognized DOTD's obligation to transfer or send both contribution amounts because Mr. Charoenpap received back pay.

Finally, Mr. Charoenpap asserts that, when a state employee is reinstated, he is required to make a large lump sum payment to LASERS within a short period of time to get his retirement status "caught up." According to Mr. Charoenpap, Section 1701(C) intentionally allocates this financial burden to the state in instances where the employee is awarded back pay. This argument ignores Section 1701(B), which

---

[3] Additional definitions are not applicable and are omitted. <u>See</u> "PAY," *Black's Law Dictionary* (12th ed. 2024).

[4] Additional definitions are not applicable and are omitted. <u>See</u> "REMIT," *Black's Law Dictionary* (12th ed. 2024).

also requires a reinstated employee to pay a potentially "large lump sum payment to LASERS within a short period of time" to get his retirement status "caught up." Furthermore, Mr. Charoenpap's interpretation of Section 1701(C) turns this subsection into a penalty provision, requiring employing agencies to solely incur the costs of a reinstated employee's retirement contribution simply, and only, because the employee was awarded back pay. There is no support for this interpretation within the clear wording of the statute. Thus, we affirm the Commission's ruling.

## ORDER TO DOTD

Mr. Charoenpap also asserts the Commission failed to order DOTD to confirm that it paid the full amount due to LASERS for the complete reinstatement of Mr. Charoenpap's retirement status, including interest. Mr. Charoenpap contends there is an unexplained discrepancy between the amount stated on the LASERS invoice sent to DOTD as Mr. Charoenpap's contribution and the amount paid to LASERS by DOTD. Mr. Charoenpap asks this court to order DOTD to explain and identify the amount paid to LASERS.

We have reviewed the record and have not found any document showing Mr. Charoenpap raised this issue before the Commission. We decline to address this issue for the first time on appeal. See *Katz v. Creel*, 2023-1136 (La. App. 1st Cir. 6/14/24), 391 So.3d 1119, 1126.

## DECREE

For the foregoing reasons, we affirm the March 7, 2024 ruling and order of the Civil Service Commission. All costs of this appeal are assessed against Rittirong Charoenpap.

**AFFIRMED.**

8